White *v.* Conly.

---

B. F. WHITE *v.* N. E. J. CONLY.

PLEADINGS AND PRACTICE. *Damages.* W. and C. quarreled· and fought, and during the fight W.'s son, who had not been engaged in the quarrel, without the knowledge of W, cut C., from which he died: *Held,* W. was not liable in a suit for damages for the killing of C., as the killing was not the natural and proximate consequence of W.'s wrong.

FROM MARSHALL.

Appeal in error from the Circuit Court of Marshall county. W. S. McLEMORE, J.

LEWIS BROS. and WATSON & SYKES for White.

White *v.* Conly.

WALKER, WISENER, COWDEN, ARMSTRONG, JONES, MURRAY, McCLURE, SMITHSON, MARSHALL and SWANSON for Conly.

DEADERICK, C. J., delivered the opinion of the court.

Mrs. Conly, the defendant in error, recovered of White damages for killing her husband. The facts are, Conly and White, at a trial before a magistrate between them, had a quarrel. It began by angry words addressed by Conly to White, which were replied to, in an angry manner, and both parties advanced and fought, and during the fight, White's son, J. T. White, who had not engaged in the quarrel, cut Conly with a knife in the stomach. Of this wound the said Conly died, and this suit was brought by his widow to recover damages against both—father and son. Verdict and judgment were rendered against both, and B. F. White alone appealed. The Referees recommend an affirmance of the judgment, and plaintiff in error has excepted to their report.

The exceptions are directed mainly to the charge, and to the refusal to charge as requested.

The court charged the jury as follows: "If you find from the proof that Conly and B. F. White were quarreling, and B. F. White advanced upon Conly, and assaulted him, and the fight between the two ensued, and during the progress of the fight J. T. White rushed in and stabbed Conly to death, acting in sympathy and in aid of his father, then both are guilty of an unlawful killing, and are liable to the plaintiff in damages."

The same charge is repeated upon the hypothesis that Conly willingly went into the fight, with no deadly intent, and B. F. White seized a deadly weapon and struck with it, and J. T. White then stabbed Conly. And the concluding paragraph of the charge is as follows: "If B. F. White engaged willingly in an affray, although he may not himself have had any deadly intent—any purpose to kill—still; if (his son) J. T. White rushed in, in aid of his father, and inflicted a fatal wound on Conly, both B. F. and J. T. White would be liable to damages."

The case of *Beets* v. *The State*, Meigs' R., 105, is relied upon to sustain the correctness of the charge in this case. In that case the court charged the jury if George Beets was fighting in self-defense, and James Beets shot Rayle, the deceased, without the knowledge or consent of George, George would be guilty of no offense; but if George fought willingly, so that he was guilty of an affray, and, while thus fighting, if James Beets shot Rayle, it would be manslaughter in George, although James shot without the knowledge or consent of George.

This court held, Judge Green delivering the opinion of the court, that there was no error in the charge of the court. His Honor said, in support of the correctness of the holding, that if a man is fighting with another, not intending to kill, but by an unlucky blow slays his adversary, he is guilty of manslaughter—not because he intended to kill, but because he was engaged in an unlawful act, and the blow and the death were the consequences of that act,

and he must be responsible for the result, although he did not intend it. This, we think, is sound law. It was the result of his own unlawful act. But his Honor added: Upon the same principle it is that he is responsible to the same extent, though the fatal blow be struck by another, who assisted him, without any concert on his part. And he cites 1 Russ. on Cr., 398, and 1 Hale 446, as sustaining this last proposition. We do not think these citations sustain the conclusions of his Honor. The principle stated in Russ. on Cr., 510, 6 Am. Ed. of 1850, which cites for its authority 1 Hale, 446, is that persons participating in a homicide may be guilty of different degrees of the offense, as if A assault B, of malice, and they fight, and A's servant comes in aid of his master, and B is killed, A is guilty of murder, but the servant, if he knew not of A's malice, is guilty of manslaughter only. This, we think, a different case from the one at bar, for both participated in the killing, the master with malice, the servant without malice, but to assist his master.

In 1 Bishop's Cr. Law, sec. 439, it is said: "The true view is doubtless as follows: Every man is responsible, criminally, for what of wrong flows directly from his corrupt intentions; but no man, intending wrong, is responsible for an independent act of wrong committed by another." "If the wrong done was a fresh and independent wrong, springing wholly from the mind of the doer, the other is not criminal therein, merely because when it was done he was intending to be partaker with the doer in a

different wrong." This is said in a case where there is concert of action between the wrong-doer, and the reason of the non-liability for the act of another, in which the defendant neither participated nor intended of participate, is still stronger, there being no concert of action between B. F. and J. T. White, either as to the affray or the stabbing.

The charge of his Honor, the circuit judge, makes B. F. White responsible for the act of J. T. White, which he neither consented to, advised, or knew of, for we think it satisfactorily appears that B. F. White did not know that Conly was stabbed until they were separated; nor did J. T. White participate in the quarrel, or say or do anything indicating a purpose to interfere, until he stabbed deceased. The injuries inflicted by B. F. White upon ·Conly were slight. The injury of which he died was not inflicted by B. F. White, nor by his procurement, advice, consent or knowledge, and it cannot be said that what he did was the natural or proximate cause of the death of Conly. To constitute a claim for damages, the party against whom they are claimed must be chargeable with the loss. The loss or injury must be the natural and proximate consequence of the wrong. 9 Heis., 851. And in *Manier* v. *The State*, 6 Bax., 600, it is said, in every unlawful homicide the killing must be done by the party charged, or by another in complicity with him, or it must be the natural and reasonable sequence of some unlawful or negligent act in which the accused is engaged; and, it is added, it would be monstrous to

hold that when a party intended to kill, but did not kill, and a party with whom he was in no complicity accidentally or recklessly kills the adversary of the first party, that the latter should suffer the consequences of such reckless or casual act; much less could such a doctrine be supported when there is no such intent. We think this is the sounder doctrine, and it in effect overrules the case of *Beets* v. *The State.* 1 Bish. Cr. Law, secs. 433-440.

We hold, therefore, that the charge in this case was erroneous, and that the report of the Referees should be set aside, and the judgment of the circuit court should be reversed, and the cause remanded for a new trial as to B. F. White.